**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *ex rel.* ) | |
| **CURTIS J. LUSBY**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| *vs.* ) | **CAUSE NO. 1:03-CV-0680-SEB-WTL** |
| ) | |
| **ROLLS-ROYCE CORP.**, ) | |
| ) | |
| Defendant. ) | |

**E N T R Y**

**on Relator's Motion for Leave to File Amended Complaint (doc. 86)**

On December 20, 2007, the Court granted Defendant's motion for judgment on the pleadings, ruling that Relator Curtis J. Lusby had failed to plead his allegations under the False Claims Act, 31 U.S.C. § 2729, *et seq.*, with sufficient particularity.  The Court allowed Mr. Lusby until January 25, 2008 to either move for leave to file an amended complaint, with a properly-pleaded proposed complaint attached, or dismiss the action.  At 6:28 p.m. on this deadline, well-after the close of business, Mr. Lusby instead filed a motion to extend his deadline to February 11, 2008.  (Doc. 80).  On February 11, 2008, following an abbreviated briefing schedule, the Court granted Mr. Lusby's request for an extension of time but enlarged it to February 25, 2008.  (Doc. 88).  This Order contained a substantive discussion and interpretation of the personal-knowledge requirement for a False Claims Act claim and concluded with a warning:  "Finally, we specifically admonish Mr. Lusby that this is his last opportunity to present a viable complaint; there will be no further extensions of time."  Unknown to the Court

1

at the time this Order was issued, Mr. Lusby had, minutes before, already filed a motion for leave to file an amended complaint.

On February 21, 2008, Mr. Lusby asked for another extension of time to supplement his motion for leave to file an amended complaint to seven days after his receipt of additional documents pursuant to a Freedom of Information Act request. (Docs. 89 and 90). He also asked that the stay of discovery be lifted and that Rolls-Royce be ordered to produce, within fifteen days, (1) all delivery orders placed against five Air Force and Navy contracts ("Basic Ordering Agreements") that "relate to parts complain[ed] of by Relator" and (2) all invoices, certificates of compliance, and evidence of payment receipts relating to said parts. (*Id.*). The Court denied Mr. Lusby's motion to lift the discovery stay and allowed him only until the original deadline of February 25, 2008 to file a superseding motion for leave to filed an amended complaint. (Doc. 91). Mr. Lusby did not file a superseding motion or otherwise seek to supplement his February 11, 2008 motion.

On motions to amend pleadings, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)(2). A court may, however, properly deny a request to amend "if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice or if the pleading is futile." *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007) (quoting *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir.2002)), *cert. denied*, 128 S.Ct. 1246, 170 L.Ed.2d 66 (2008). Amendment would be futile if the proposed complaint fails to conform to the federal rules. *Id.*

Mr. Lusby began working for Rolls-Royce[1] as a contract design engineer in August 1992. In 1996, he was hired by Rolls-Royce as a Senior Project Engineer and held this position until his employment was terminated in November 2001.  He worked in the "T56/501" department.

The T56/501, or "T56", is an aircraft engine that Rolls-Royce has manufactured and supplied to the United States Government for military and quasi-military uses since the 1950s. Rolls-Royce supplies complete engines, engine assemblies, engine subassemblies, and parts, and also performs maintenance and overhaul services on the installed T56 engines.  Each engine is comprised of a compressor section, combustors, a turbine section, and a gear case.  The turbine section contains four rotor assemblies, each of which contains turbine blades and turbine vanes (also referred to as nozzles).[2]  During his employment, Mr. Lusby gained "personal knowledge of design features, manufacturing methodology and quality issues associated with the final production and inspection of turbine blades, turbine nozzles, vanes and other parts being sold to the Government" and he is "knowledgeable about Rolls-Royce's manufacturing, quality control, and quality assurance operations and has direct and independent knowledge of the information on which his allegations are based."  Proposed Amended Complaint, ¶¶ 8 and 81.

Mr. Lusby has identified several T56 Government supply contracts wherein Rolls-Royce is required to maintain quality control over its manufacturing processes, to offer to the

---

[1] As in the Entry of December 20, 2007 (doc. no. 79), "Rolls-Royce" refers to its relevant predecessors as well.  The following factual and procedural background is largely repeated from that Entry.

[2] Although the Proposed Amended Complaint describes the T56 engine components and functions in great detail, an extensive knowledge of these facts is unnecessary for the purposes of this lawsuit.

Government for acceptance only parts that conform to contract specifications, and to furnish certification of such conformance.[3]  Engineering, manufacturing, and quality-control standards are provided in, or adopted by, the contracts and/or are required by federal regulations.

According to Mr. Lusby, since prior to the commencement of his employment and continuing to the present day, Rolls-Royce has employed faulty and unreliable manufacturing and inspection processes and, as a result, T56 engines and parts that fail to conform to contract specifications have been delivered to the Government.  He asserts that Rolls-Royce was aware of these deficiencies, in part because he notified his superiors, but that it took no action to correct the problems.

In 1991, the United States Air Force determined that some of the Rolls-Royce turbine blades did not conform to contract specifications.  Mr. Lusby alleges that Rolls-Royce represented to the Government that it had devised a test to determine blade compliance when, in fact, the only test that it employed was one of the tests which Mr. Lusby previously identified as inadequate.  When the test was applied, 42% of the turbine blades in the Air Force inventory were determined to be nonconforming, but Mr. Lusby contends that application of a proper test would have revealed that the remaining 58% were also defective.  Mr. Lusby alleges that Rolls-Royce's knowing misrepresentations regarding the efficacy of the test and the conformity of the remaining blades induced the Government to enter into a settlement agreement with Rolls-Royce on March 11, 1999 by which Rolls-Royce compensated the Government for only a fraction of

---

[3] The contracts identified by Mr. Lusby incorporate by reference certain Federal Acquisition Regulations (FARs), which set out the standards and requirements that Government contractors must meet.

the damages that it had caused.

The False Claims Act authorizes private persons to bring civil actions for violations of the Act on their own behalf and on behalf on the United States. 31 U.S.C. § 3730(b). The Act also creates a cause of action for employees who suffer retaliation from their employers as a result of "lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . . ." 31 U.S.C. § 3730(h).

On April 25, 2002, in response to his termination on November 1, 2001, Mr. Lusby filed his first action in this court, *Lusby v. Rolls-Royce Corp.*, Cause No. IP 02-0633-C-B/S ("*Lusby I*"). In that action, Mr. Lusby alleged discrimination in employment based on age under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and unlawful retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h). Specifically, Mr. Lusby alleged that on or about June 26, 2001, he "informed the [Rolls-Royce] Executive Vice President of Business Operations that Defendant was knowingly manufacturing and selling defective parts to the government." *Lusby I*, Complaint, ¶ 17. He claimed that he was terminated because of this report and because of his age. On June 20, 2003, Mr. Lusby and Rolls-Royce jointly filed a Stipulation For Dismissal With Prejudice, which was entered by the Court on June 23, 2003. (Docs. 25 and 26).

On May 9, 2003, two months before stipulating to the dismissal of *Lusby I*, Mr. Lusby filed the initial complaint in the present Cause ("*Lusby II*"). The Government formally declined to intervene on July 29, 2005. Sixteen months later, on December 7, 2006, after his initial and

5

substitute counsel had both withdrawn, Mr. Lusby filed a *pro se* amended complaint which

repeated verbatim the allegations of the first complaint, but substituted his own signature for

withdrawn-counsel's signature and, for the first time, served the complaint on Rolls-Royce.  On

February 9, 2007, Mr. Lusby was granted leave to file his "First Substantive Amended

Complaint" which contained new allegations and claims.  Rolls-Royce filed its motion for

judgment on the pleadings on May 22, 2007, which the Court granted on December 20, 2007.

The Proposed Amended Complaint asserts two counts of violations under the False

Claims Act.  Count 1 asserts violations of 31 U.S.C. § 3729(a)(1) and (2), which provide,

respectively:

> **(a) Liability for certain acts. —** Any person who —
> **(1)** knowingly presents, or causes to be presented, to an officer or
> employee of the United States Government or a member of the Armed Forces of
> the United States a false or fraudulent claim for payment or approval; [or]
> **(2)** knowingly makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the Government;
> . . .
> is liable to the United States Government . . . .[4]

Mr. Lusby contends that Rolls-Royce violated § 3729(a)(1) by presenting claims for payment to

the Government in which it falsely represented that the T56 parts conformed to contract

requirements.  Mr. Lusby contends that Rolls-Royce violated § 3729(a)(2) by presenting signed

documents certifying that the parts sold to the Government conformed to contract specifications,

despite Rolls-Royce's knowledge of its inability to verify conformance of the parts sold due to

an inadequate and improper quality-assurance system.  Mr. Lusby also alleges that Rolls-Royce

---

[4] Mr. Lusby asserts a private right of action under 31 U.S.C. § 3730(b), which provides
that "[a] person may bring a civil action for a violation of section 3729 for the person and for the
United States Government."

violated § 3729(a)(2) by representing in signed documents that it had complied with several contractual requirements, despite Rolls-Royce's knowing failure to abide by these requirements.

Count 2 asserts a violation of 31 U.S.C. § 3729(a)(7), which provides that anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . is liable to the United States Government." Mr. Lusby alleges that Rolls-Royce violated this section of the Act after the Government determined that Rolls-Royce delivered nonconforming turbine blades: by knowingly making false statements to the Government regarding the efficacy of its quality-assurance test, it induced the Government to settle the dispute for a lower payment, thus avoiding or decreasing its obligation to the Government.

Rolls-Royce opposes the motion to amend on the grounds that the proposed claims are barred by the doctrine of res judicata and the proposed complaint again fails to plead with the particularity required by Fed. R. Civ. P. 9(b) for fraud claims. Rolls-Royce asks the Court to deny the motion and dismiss the action with prejudice.

The doctrine of res judicata prevents parties from relitigating claims that were or could have been raised in a previous lawsuit that resulted in a final judgment on the merits. *Highway J Citizens Group v. U. S. Dept. of Transportation*, 456 F.3d 734, 741 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1832, 167 L.Ed.2d 322 (2007). To establish the bar of res judicata, Rolls-Royce must prove three elements: (1) an identity of the parties or privies in *Lusby I* and *Lusby II*, (2) an identity of the causes of action in the two suits, and (3) a final judgment on the merits in *Lusby I*. *Cole v. Board of Trustees of the University of Illinois*, 497 F.3d 770, 772 (7th Cir. 2007), *cert.*

*denied*, 128 S.Ct. 1110, 169 L.Ed.2d 810 (2008); *Highway J*, 465 F.3d at 741; *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996).  If these elements are proved, "res judicata 'bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action.'" *Highway J*, 456 F.3d at 741 (quoting *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995)).

To determine whether there is an identity of causes of action, courts look to the factual bases of the two suits:

> There is an identity of causes of action if the claim emerges from the same core of operative facts as that earlier action.  [T]wo claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations. In other words, a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that has gone to final judgment.  Also, while the legal elements of each claim may be different, the central factual issues are identical.

*Cole*, 497 F.3d at 772-73 (alteration in original) (internal quotation marks and citations omitted).

The Court of Appeals for the Seventh Circuit applied the doctrine of res judicata to False Claims Act claims in its recent *Cole* decision.  The court dismissed a relator's False Claims Act action as barred by res judicata because she had previously settled and dismissed with prejudice a race-discrimination suit against her employer in which she also alleged that her employer had defrauded the government.  *Cole*, 772 F.3d at 774.  Cole worked in a pharmacy operated by the University of Illinois.  During her employment, she alleged that she observed violations of several state and federal pharmacy and drug-control laws, which she brought to the pharmacy's attention.  She first filed suit against the Board in 2002 ("*Cole I*"), alleging that she had been the victim of racial harassment that commenced after her act of "whistle blowing."  The parties

settled, and *Cole I* was dismissed with prejudice in April 2003.  Three months later, Cole

brought a second suit against the university ("*Cole II*"), this time alleging that it violated the

False Claims Act and a state whistle-blower-protection statute by (1) submitting false claims in

order to obtain payment from governmental health programs and (2) retaliating against her for

her acts of whistleblowing.

      The Seventh Circuit held that *Cole II* was barred by res judicata because "[t]he same

factual allegations are at play in both cases: the pharmacy submitted false claims for

prescriptions and compensation from both the federal and state government, Cole brought these

false claims to the pharmacy's attention, and Cole suffered discrimination and retaliatory action

following her complaint."  *Id.*, at 774.  The court concluded that the allegations in *Cole II* arose

from the same "events," "factual nebula," or "event cluster," as those in *Cole I*, varying only in

"degrees of specificity."  *Id.*  The court affirmed the dismissal of *Cole II* because the False

Claims Act "could and should have been asserted in her first suit along with her Title VII claim."

*Id.*, at 775.

      For the same reasons, *Lusby II* is barred by the doctrine of res judicata.  *Lusby I* and

*Lusby II* were both brought by Mr. Lusby against Rolls-Royce; thus, there is an identity of the

parties.  Next, *Lusby I* resulted in a final judgment on the merits.  *See , id.*, at 773; *Golden v.

Barenborg*, 53 F.3d 866, 868-69 (7th Cir. 1995) (stipulation of dismissal is a final judgment on

the merits for res judicata purposes).  Finally, there is an identity of the causes of action because

both cases "emerge from the same core of operative facts," namely, that Rolls-Royce knowingly

filed false claims with the Government.  In fact, *Lusby I* and *Lusby II* are more similar than *Cole*

*I* and *Cole II*.  In *Cole II*, res judicata precluded the False Claims Act retaliation and *qui tam* claims even though *Cole I* did not assert a False Claims Act violation.  Here, Mr. Lusby specifically asserted a False Claims Act retaliation claim in *Lusby I*.  Res judicata bars the current *qui tam* action because Mr. Lusby could have asserted these claims in his first suit.

Although the contours of his argument are difficult to discern, it appears that Mr. Lusby argues either that the stipulation of dismissal in *Lusby I* does not constitute a final judgment on the merits, or that, although *Lusby I* did result in a final judgment on the merits, its preclusive effect should be limited because that case did not resolve the dispute between the litigants.  In support of this assertion, he quotes *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999) (although black-letter law states that a judgment on the merits is preclusive, "[a] judgment that does not resolve the dispute between the litigants and in that sense is not 'on the merits' may nevertheless have a preclusive effect, though it will usually be a more limited effect than that of a judgment on the merits.").  In *Okoro*, the court held that the preclusive effect of a dismissal on the ground of frivolousness, which is a form of jurisdictional dismissal, was limited to preventing the plaintiff from filing new suits with same jurisdictional defects.  *Id*., at 1063-64. The Court reasoned that "a judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only the relitigation of the ground of that dismissal."  *Id.*, at 1063.

Mr. Lusby's reliance on *Okoro* is misplaced.  *Lusby I* was not dismissed due to a jurisdictional defect:  the parties stipulated to a voluntary dismissal with prejudice.  Moreover, Mr. Lusby does not explain, let alone indicate, in what manner the preclusive effect should be

limited.  Neither does he describe how the stipulated dismissal in *Lusby I* is any less on-the-merits than the dismissal after settlement in *Cole I*, other than to note that he did not participate in a settlement conference nor receive any payment.  He does not deny that he was represented by counsel in *Lusby I*, specifically as regards the stipulation of dismissal, and he does not deny that he agreed to the dismissal of *Lusby I* with prejudice.  The finality of a judgment is not contingent on whether the plaintiff in a given case is awarded a financial settlement.  Regardless of whether Lusby was satisfied with the results, he agreed to dismiss *Lusby I* with prejudice, which constitutes a final judgment on the merits that has preclusive effect.

Mr. Lusby also argues that there is no identity of the causes of action between *Lusby I* and *Lusby II*, but he is, again, unconvincing.  First, although he correctly notes that the cases assert violations of different sections of the False Claims Act and that a plaintiff may bring a False Claims Act retaliation claim independently of a *qui tam* action, it is well-settled, as noted above, that res judicata bars not only claims that were explicitly asserted in a prior suit but also those that could have been raised.  *Cole*, 497 F.3d at 772; *Highway J*, 456 F.3d at 741.  Second, it is the factual bases of each claim that must be identical, not the legal theories.  *Cole*, 497 F.3d at 773.

Next, Mr. Lusby contends that there is no identity of the causes of action because the relief sought in the two cases differs.[5]  Although relief sought is one factor to be considered in

---

[5] Recovery for False Claim Act retaliation claims is limited to relief "necessary to make the employee whole."  31 U.S.C. § 3730(h).  This includes reinstatement, two times the amount of back pay, interest on back pay, and compensation for any special damages suffered.  *Id.*  On the other hand, under the False Claims Act's *qui tam* provisions, a prevailing plaintiff is awarded a percentage of the proceeds of the action or settlement. 31 U.S.C. § 3730(d)(1)-(3).

determining whether there is an identity of causes of action, *see Highway J*, 456 F.3d at 742, the main inquiry is whether the two cases "emerge[] from the same core of operative facts." *Id.*, at 741 (quoting *Brzostowski*, 49 F.3d at 338-39). *Accord Cole*, 497 F.3d at 772; *Andersen*, 99 F.3d at 852; *Golden*, 53 F.3d at 869. As explained, *Lusby I* and *Lusby II* are based on the same facts and, therefore, the causes of action are the same.

Relying on *Brandon v. Anesthesia & Pain Mgmt. Ass'n*, 277 F.3d 936, 944 (7th Cir. 2002), Mr. Lusby argues that, in *Lusby I*, his "election to raise his concerns privately within his company, rather than publicly does not qualify as an FCA claim." Proposed Amended Complaint, ¶ 12. However, Mr.Lusby clearly asserted a False Claims Act retaliation claim in *Lusby I*. Count 2 of the complaint in *Lusby I* is labeled "FALSE CLAIMS ACT," and it specifically references the code section of the Act, 31 U.S.C. § 3729, *et seq*. *Lusby I*, Complaint, ¶ 28. The fact that Mr. Lusby did not allege that he raised his concerns publicly does not mean that he did not assert a False Claims Act claim in *Lusby I*; it simply means that he might not have prevailed on the merits of his claim. Res judicata applies regardless of whether the initial claim would have been successful.[6]

---

[6] Mr. Lusby also argues that "[i]t is not insignificant that Lusby filed the current *qui tam* action . . . prior to the stipulation of dismissal of *Lusby I* and that Lusby neither participated in a settlement conference, nor received any settlement compensation, nor executed any release." Reply Brief at 7. Not only is this negative argument undeveloped (we will not guess why he contends that these facts are "not insignificant"), and therefore waived, but these facts are irrelevant. The elements of res judicata have already been discussed at length and it is clear that there is no requirement that either party receive compensation in the prior suit or that the second suit be filed after the first suit concludes in a final judgment on the merits. If the fact that *Lusby II* was filed before the dismissal of *Lusby I* has any import, it is rather an indication that Mr. Lusby believed that there had been other False Claim Act violations and that he had sufficient information to assert his *Lusby II* claims as part of, and prior to the dismissal of, *Lusby I*.

Finally, Mr. Lusby observes that, pursuant to 31 U.S.C. § 3730(b)(1), he "did not and could not have agreed to dismiss the present *qui tam* action without permission of the government." Proposed Amended Complaint, ¶ 16. However, this section refers to a relator's lack of authority to voluntarily dismiss a suit under the Act. Government consent is not required before a Court enters an involuntary dismissal. Further, Mr. Lusby puts forth no facts or allegations indicating that he sought permission to dismiss the action or that it would have been denied.[7] In any event, this case deals only with Mr. Lusby's ability to bring False Claims Act allegations, not the Government's ability to do so. *See Cole*, 497 F.3d at 772 n.2. Mr. Lusby could and should have asserted his False Claims Act *qui tam* claims in his first suit. He did not and they are, therefore, barred by res judicata.

Alternatively, even if res judicata does not bar Mr. Lusby's current action,[8] the Proposed Amended Complaint still falls short of the heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires that "a party must state with particularity the circumstances constituting fraud". To prevail on his False Claims Act claims, Mr. Lusby must prove three elements: (1) Rolls-Royce presented a claim or made a statement to the Government in order to receive money; (2) the claim or statement was false or fraudulent; and (3) Rolls-Royce knew that it was false or fraudulent. *See United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) applies because a claim under the Act alleges fraud.

---

[7] The Government declined to intervene in this Cause on July 29, 2005.

[8] Mr. Lusby alleges that Rolls-Royce's violations of the False Claims Act continued after his termination and continue to the present day. Because res judicata only precludes relitigation of those claims that were or could have been brought in the prior action, only the claims arising from violations prior to the dismissal of *Lusby I* are barred by res judicata.

*United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir.), *cert. denied*, 540 U.S. 968, 124 S.Ct. 450, 157 L.Ed.2d 202 (2003). These heightened pleading standards serve to protect against the reputational harms caused by false allegations of fraud. *See Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.) ("By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."), *cert. denied*, 528 U.S. 874, 120 S.Ct. 178, 145 L.Ed.2d 151 (1999); *Fowler*, 496 F.3d at 740 ("'A principal purpose for requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading).'").

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)), *cert. denied* 537 U.S. 1105, 123 S.Ct. 870, 154 L.Ed.2d 774 (2003).

As we explained in our previous Entries (docs. 79 and 88), in the False Claims Act context, Rule 9(b) requires that "[f]alse claims allegations must relate to actual money that was or might have been doled out by the government based upon actual and particularly-identified false representations." *Gross*, 415 F.3d at 605. A relator must plead facts as to the time, place,

and substance of a defendant's alleged fraudulent acts and who engaged in them. *Clausen*, 290 F.3d at 1308. Specific dates, amounts, and contents of false claims or statements must be provided, as well as specific facts showing that a specific payment of money by the Government was conditioned on those claims or statements. *Gross*, 415 F.3d at 605; *Garst*, 328 F.3d at 378; *Clausen*, 290 F.3d at 1304.

Actual claims must be specifically identified because it is the claim for payment that is actionable under the Act, not the underlying fraudulent or improper conduct. *Clausen*, 290 F.3d at 1311 ("Without the *presentment* of such a claim . . . there is simply no actionable damage to the public fisc as required under the False Claim Act. The submission of a claim is thus not . . . a 'ministerial act,' but the *sine qua non* of a False Claims Act violation."). "[A]s with every other facet of a necessary False Claims Act allegation, if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.*

A plaintiff who makes broad allegations of a fraudulent scheme and then asserts in a conclusory fashion that, as a result of the scheme, a defendant must have made false claims to the Government fails to satisfy Rule 9(b) heightened pleading requirements. *United States ex rel. Snapp, Inc. v. Ford Motor Company*, 532 F.3d 496, 504 (6th Cir. 2008) (when a relator pleads a complex and far reaching fraudulent scheme, it must provide representative examples of specific false claims submitted to the government in order to satisfy Rule 9(b)); *Clausen*, 290 F.3d at 1311 (Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims

15

requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."). Instead, a relator must point to specific false claims that have actually been made or submitted to the Government.[9] *Fowler*, 496 F.3d at 741-42 (relator must present "evidence *at an individualized transaction level*" to demonstrate that a false claim was made (emphasis in original)); *U. S. ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (inference that defendant must have submitted false claims insufficient; relator must point to a specific false claim that was actually submitted).

Once again, Mr. Lusby's pleadings fall short of Rule 9(b)'s threshold by failing to identify a single false claim. The Court specifically warned him that he "cannot prevail based on allegations that Defendant should have, must have, or likely had made such claims or statements based on, for example, pre-existing regulatory or contractual requirements." (Doc. 88 at 10). However, Mr. Lusby again attempts to do just that in his Proposed Amended Complaint. He contends that "[t]he fact that payment was made carries the inference that the defendant presented an acceptable claim with certifications that satisfied the terms and conditions [of the contracts and applicable regulations]," and that "Government disbursing officers are inflexible as to requiring a complete package of documentation prior to the payment of claims presented to the government. Simply put, government policy is: no certificate, no payment."[10] Reply Brief

---

[9]A relator must point to a specific, actual false claim in order to protect those defendants who disclosed alleged deficiencies to the Government and provided a refund, declined to bill, or otherwise prevented harm or loss to the Government, thus avoiding fraud. *See Fowler*, 496 F.3d at 742; *Garst*, 328 F.3d at 378.

[10] Rule 9(b)'s requisite "indicia of reliability" is also lacking because Mr. Lusby provides no factual basis for his allegation that Government policy regarding contractor certifications is inflexible. *See Clausen*, 290 F.3d at 1311.

at 2-3 n. 2; 5.  As the case law and our previous Entries have made clear, an "inference" that a false claim was submitted is insufficient.

Mr. Lusby argues that he has satisfied the heightened pleading requirements for his allegations in Count 1 by identifying the relevant contracts, along with the applicable terms, conditions, and regulations incorporated therein, and by identifying the dates of shipments and amounts of payments made by the Government to Rolls-Royce.[11]  Lusby contends that he has identified the dates and contents of the false claims submitted.  In fact he has not identified the date of a single claim.  Instead, he has identified the dates that Rolls-Royce delivered parts to the Government and then surmised that false claims must have been submitted on these dates.  Nor has he identified the contents of any claim.  Instead, he has identified the form certification that Government contractors are required by regulation to attach to deliveries of parts to the Government and then surmised that Rolls-Royce must have submitted the form.  However, as we have explained, allegations that a defendant "must have" submitted false claims are insufficient.[12]  *See Clausen*, 290 F.3d at 1311.

---

[11] Count 1 asserts violations of 31 U.S.C. § 3729(a)(1) and (2).  Although the sections differ (the former requires only the submission of a false or fraudulent claim for payment, while the latter requires the use of a false record or statement to get a false or fraudulent claim paid), both require an actual false claim and knowledge of the falsity of the statement.  *Fowler*, 496 F.3d at 742.

[12] Mr. Lusby's allegations that Rolls-Royce has continued to submit false claims to the Government after his termination are pleaded with even less particularity.  Not only has he failed to identify any specific false claim, but he alleges no basis for his personal knowledge of Rolls-Royce's operations subsequent to his termination.  As explained in our previous Entry (doc. 88), a False Claims Act relator must possess personal knowledge of the facts regarding the substantive fraud alleged.

Count 2 of the Proposed Amended Complaint suffers from the same deficiencies.  It alleges that Rolls-Royce knowingly made false statements to the Government regarding the existence of an adequate quality-assurance test in order induce a favorable settlement and thus to decrease its liability to Government for delivering nonconforming parts.  It asserts that Rolls-Royce's knowing misrepresentations to the Government were "reaffirmed" by a representative of Rolls-Royce on March 11, 1999, and it names an attorney for the Government who was involved in the suit who allegedly relied on the statements.  Proposed Amended Complaint, ¶¶ 94 and 96.  These allegations do not identify the date, content, or maker of any false statement by Rolls-Royce[13] or any facts demonstrating that the statements actually induced the Government's settlement.  Rule 9(b) requires such specifics.

But Count 2 is deficient for a more fundamental reason.  It alleges a violation of 31 U.S.C. § 3729(a)(7), which imposes liability on those who use a false statement or record in order to avoid or decrease an "obligation" to pay the Government.  This is commonly referred to as the "reverse false claims" portion of the Act "because the financial obligation that is the subject of the fraud flows in the opposite of the usual direction."  *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1195 (6th Cir. 2006), *cert. denied*, 128 S.Ct. 388, 169 L.Ed.2d 264 (2007).  While the courts of appeals that have construed this section are not in complete agreement as to its meaning,[14] they have generally held that, in order to constitute an obligation, a defendant must have a pre-existing legal duty to pay the Government.  *Id.* ("the Plaintiff is

---

[13] It is unclear what a "reaffirmation" of a representation is.

[14] We have not found that the Seventh Circuit has addressed the meaning of "obligation" in this section.

18

required to allege that the defendant had an *existing legal obligation* to pay . . . . * * *  [T]he fact

that the making or using of a false statement or record might result in a fine or a penalty is

insufficient. . . ." (emphasis in original) (citations and internal quotation marks omitted));

*American Textile Manufacturers Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 738 (6th Cir.

1999) ("Contingent obligations — those that will arise only after the exercise of discretion by

government actors — are not contemplated by the statute."), *cert. denied*, 529 U.S. 1054, 120

S.Ct. 1556, 146 L.Ed.2d 461 (2000); *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d

648, 657 (11th Cir. 1997) ("[T]he reverse false claims act does *not* extend to the potential or

contingent obligations to pay the government fines or penalties which have not yet been levied

or assessed . . . and which do not arise out of an economic relationship between the government

and the defendant . . . under which the government provides some benefit to the defendant . . . *in*

*exchange* for an agreed or expected payment . . . [to] the government." (emphasis in original)); *Q*

*International Courier, Inc. v. United States Postal Service*, 131 F.3d 770, 773 (8th Cir. 1997)

("The duty . . . must have been an obligation in the nature of those that gave rise to action of debt

at common law for money or other things owed.").

Giving the "obligation" required by 31 U.S.C. § 3729(a)(7) the expansive interpretation

argued by Mr. Lusby would result in a "probable flood of litigation".  *American Textile*

*Manufacturers*, 190 F.3d at 739 (such an expansive interpretation of 31 U.S.C. § 3729(a)(7)

would "permit[] suits against any person who makes a false statement to the federal government

that he did not commit a statutory or regulatory violation that *might have* led to the imposition of

a fine, payment of liquidated damages, imposition of a tax, or forfeiture of property."(original

emphasis)).  Interpreting Rolls-Royce's alleged misrepresentations as imposing an obligation to

pay would result in a potential second cause of action against anyone who attempted to defend against a claim for payment brought by the Government.

Based on this precedent, the Court concludes that Mr. Lusby has failed to allege that Rolls-Royce had an obligation to pay money to the Government for the purposes of 31 U.S.C. § 3729(a)(7). Rolls-Royce had no pre-existing legal duty to pay at the time of the alleged misrepresentations.

Allowing the filing of Mr. Lusby's Proposed Amended Complaint would be futile because his claims are barred by the doctrine of res judicata, because he has failed to plead his False Claims Act claims against Rolls-Royce with the particularity required by Fed. R. Civ. P. 9(b), and because Count 2 is untenable. Therefore, Mr. Lusby's motion for leave to file an amended complaint is **DENIED**. Because Mr. Lusby has repeatedly submitted defective pleadings, and because the Court warned him that failure to submit a properly-pleaded complaint would result in dismissal of his action,[15] this Cause will be **DISMISSED WITH PREJUDICE.**

**SO ORDERED**

Date: 09/10/2008

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[15]As a last-ditch effort, Mr. Lusby asks for leave to file yet another amended complaint and inexplicably invokes Fed. R. Civ. P. 61 as the basis for his request. Rule 61 states the harmless-error standard for setting aside rulings or orders of the court. Its relevance here is unexplained and obscure, to say the least.

Distribution:

Koryn Michelle Markham
Barnes & Thornburg, L. L. P.
koryn.markham@btlaw.com

Edward A. McConwell, Sr.
McConwell Law Offices
ed@mcconwell.com

Peter Abernethy Morse, Jr.
Barnes & Thornburg, L. L. P.
pmorse@btlaw.com

Joseph  Striewe
joestriewe@striewelaw.com

Richard P. Winegardner
Barnes & Thornburg, L. L. P.
rwinegar@btlaw.com

Jill E. Zengler, Assistant United States Attorney
United States Attorney's Office
jill.zengler@usdoj.gov