UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CURTIS J. LUSBY, <br><br>            Plaintiff, <br><br>       v. <br><br> ROLLS-ROYCE CORPORATION, <br><br>            Defendant. | ) ) ) ) ) ) ) ) ) ) ) )  1:03-cv-680-SEB-WGH |

**ORDER DENYING MOTION TO ENFORCE THE
COURT'S ORDER OF AUGUST 8, 2011**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Relator's Motion to Enforce the Court's Order of August 8, 2011, filed September 28, 2011. (Docket Nos. 264-66). Defendant filed its Opposition to Relator's Motion to Enforce on October 17, 2011. (Docket No. 284). Relator's Reply was filed on October 25, 2011. (Docket No. 290).[1]

This is a qui tam suit in which Relator, Curtis Lusby, claims that Defendant knowingly presented, or caused to be presented, to an officer or employee of the United States Government false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729.

---

[1] Docket No. 278 is a Response to Sealed Filings (Dkts. 264-266) filed by Rolls-Royce in which the Defendant states there is no objection to the sealing of some exhibits attached to this motion. Those exhibits shall remain sealed at this time.

Relator filed a Motion to Compel requesting that the court compel Defendant to respond to certain discovery. The court issued an Order granting, in part, and denying, in part, Relator's Motion to Compel and specifying in which areas of Relator's discovery Defendant needed to provide additional responses. (Docket No. 242). Defendant then served Supplemented Responses to Relator's discovery requests in accordance with the court's Order. Relator now claims that Defendant's Supplemented Responses are inadequate and do not comply with the court's Order.

The Magistrate Judge, being duly advised, now finds as follows:

1. **Modified First Request for Production No. 15:** In the court's August 8, 2011 Order, the Magistrate Judge determined that "Rolls-Royce shall specify by Bates Stamp number all monthly MRB reports referenced in the QADI 800." Defendant, following the court's August 8, 2011 Order, supplemented its Response to Relator's Modified First Request for Production No. 15 with the following:

> Rolls-Royce has produced reports or memoranda describing aggregating monthly MRB data at Bates Nos. RR00033528-RR00033566. These reports include monthly MRB report data as set forth in QADI 800. Rolls-Royce believes that additional or different reports reflecting the data set forth in QADI 800 were also prepared during the discovery time period, but there was no requirement or business need to retain such reports and Rolls-Royce has not been able to locate additional responsive monthly MRB reports from the discovery period (1994-2001). Rolls-Royce notes further that it has previously produced the relevant MRB reports (e.g., concessions and Technical Analysis Reports) that concern the

parts at issue in this case; these reports would have been used to generate monthly MRB data.

(Opposition to Relator's Motion to Enforce at Ex. 1A, 12-13).

While Relator argues that Defendant's Supplemental Response is non-responsive because it alleges that the document that Defendant produced is not an MRB Report, the Magistrate Judge concludes that Defendant has complied with the court's August 8, 2011 Order. Defendant produced what it alleges are the only documents it has that are responsive to Relator's Modified First Request for Production No. 15. Furthermore, Defendant affirmed that such MRB Reports did exist in the past but likely were not retained and have not been located. The court's August 8, 2011 Order did not require any more of Defendant than what it has provided. The Magistrate Judge must point out, however, that Defendant will be held to these assertions and will not be permitted to use at trial any MRB Reports that were not produced in response to Relator's Modified Request for Production No. 15.

    2. **Modified First Request for Production No. 20:** In the court's August 8, 2011 Order, the Magistrate Judge determined that "Rolls-Royce is to produce any additional [internal] audits which have not been produced during the years 1996 and 1997, or certify that none are in existence, within fifteen (15) days of the date of this Order."[2]

---

    [2]The Magistrate Judge modified the original Order to indicate that *internal*, rather than customer, audits were to be produced. (Docket No. 250).

After the court's August 8, 2011 Order, Defendant supplemented its Response to Relator's Modified First Request for Production No. 20 as follows: "With regard to 'internal' audits for the years 1996 and 1997, Rolls-Royce has repeatedly searched for records of such audits and searched for them again in response to Relator's Motion to Compel. Rolls-Royce certifies that, despite multiple diligent searches, it has not been able to locate any additional internal audits." (Opposition to Relator's Motion to Enforce at Ex. 1B, 13).

Relator found fault in this Response because Defendant did not specifically certify that no such internal audits exist or were in existence at the time this lawsuit was filed. This Magistrate Judge concludes that Defendant's statement can be construed as a certification that no such internal audits exist, and the Response, therefore, complied with the court's August 8, 2011 Order.[3]

3. **Modified First Request for Production No. 21:** In the court's August 8, 2011 Order, the Magistrate Judge determined that "Rolls-Royce shall provide copies of the items listed in Exhibit B to Relator's Reply (Docket No. 237) within fifteen (15) days of the date of this Order, or answer an interrogatory establishing why those documents do not currently exist or cannot be found."

After the court's August 8, 2011 Order, Defendant supplemented its Response to Relator's Modified First Request for Production No. 21. Defendant

---

[3]The Magistrate Judge notes that Defendant will be held to its certification that no internal audits exist, and will not be permitted to use any internal audits at trial if they are later discovered. Furthermore, the issue of spoliation will have to be resolved in the future.

explained that it had produced all documents identified by Exhibit B that it could locate. (*See* Opposition to Relator's Motion to Enforce at Ex. 1B, 13). Defendant also explained which documents it could not locate and why:

> There are eleven audits listed on Relator's Exhibit B; for clarity, Rolls-Royce has included a copy of Relator's Exhibit B with this response with numbers (Nos. 1-11) added to the right of the first column so that each audit can be identified precisely. All of the documents produced with this interrogatory concern Exhibit B Nos. 1 and 6 (identified by Relator as Audit Nos. 99-027 and 00-002). It is possible that Rolls-Royce received additional third-party audit reports or Corrective Action Requests from these two audits; however: (1) Rolls-Royce would not have received all of the third-party reports generated during these audits and (2) after an audit is complete and all outstanding issues are resolved there is no requirement or business reason for Rolls-Royce to retain copies of such documents. Indeed, Rolls-Royce's retention policies have provided at certain times that ***internal*** audits should be retained for three years, but Rolls-Royce did not have a retention policy applicable to third-party audits during the discovery period (1994-2001). *See, e.g.*, RR00018561 - RR00018563 (one of the versions of QADI 130 produced to Relator in this lawsuit). Consequently, although Rolls-Royce has conducted an additional search for third party audit reports and Corrective Action Requests that the auditor may have provided to Rolls-Royce regarding these two audits, it has not been able to locate any such documents.
>
> . . . . [Further], Rolls-Royce has no record that it received any report or Corrective Action Request from the auditors who conducted Nos. 2 and 3 (identified by Relator as Audit Nos. 99-029 and 99-030). With respect to the remaining seven third-party audits (Nos. 4-5, 7-11), it is likely that Rolls-Royce did, at some point, receive one or more reports or Corrective Action Requests concerning these audits from the third-party auditors. As noted, however, after an audit is complete and all outstanding issues are resolved, there is no requirement or business reason for Rolls-Royce to retain copies of such documents. Consequently, Rolls-Royce believes that any documents that it received were discarded or

>
> destroyed in the ordinary course of business prior to the filing of this lawsuit in 2003.

(*Id.* at 14-15 (emphasis in original)).

Relator claims that Defendant's Supplemented Response is inadequate. However, this Magistrate Judge concludes that Defendant did include additional audits that it believed were responsive to the court's August 8, 2011 Order and explained why it was unable to locate those audits that were not produced. While Relator disputes the accuracy of Defendant's rationale for not being able to produce some of the audits, Defendant has provided *a* reason why the audits "do not currently exist or cannot be found." Therefore, Defendant properly complied with the court's August 8, 2011 Order.

    4. **Modified First Interrogatories Nos. 11 and 12:** In the court's August 8, 2011 Order, the Magistrate Judge determined that "[t]he Motion to Compel is **DENIED,** subject to Rolls-Royce providing a further definition of "nonconforming" within fifteen (15) days of the date of this Order." Relator admits that Defendant did, in fact, provide a definition of "nonconforming," but finds fault in the substance of Defendant's definition and argues that a new term, "design intent," is not defined. Despite Relator's disagreement with Defendant's definition of "nonconforming," the Magistrate Judge concludes that Defendant did comply with the court's August 8, 2011 Order.

    5. **Modified First Interrogatory No. 14:** In the court's August 8, 2011 Order, the Magistrate Judge determined that "[f]or those individuals named in

the answer to Interrogatory No. 14, Rolls-Royce shall provide appropriate last known address or contact information for those named individuals. To the extent Rolls-Royce contends that those individuals are members of the control group, they must designate which of the individuals must be contacted through counsel."

After the court's August 8, 2011 Order, Defendant supplemented its Response to Relator's Modified First Interrogatory No. 14 by providing the last known address or contact information of all individuals named in Interrogatory No. 14. Furthermore, Defendant indicated that each of the identified individuals were members of the "control group." (Opposition to Relator's Motion to Enforce at Ex. 1A, 7-8).

Relator argues that Defendant's Supplemented Response is inadequate because it does not explain why each individual listed is part of the "control group." Relator also argues that Defendant should be ordered to include a privilege log to the extent that Defendant asserts that members of the "control group" are not to discuss privileged communications.

Despite Relator's objections, the Magistrate Judge concludes that Defendant has fully complied with the court's August 8, 2011 Order. Of course, Relator will have the opportunity upon deposing each of the identified individuals to challenge whether or not they were properly identified as part of the "control group" and to determine whether privileged communications were

involved. But, requiring Defendant to defend its "control group" designations was not a requirement of the court's August 8, 2011 Order.

For these reasons, Relator's Motion to Enforce the Court's Order of August 8, 2011, is **DENIED.**

**SO ORDERED.**

**Dated:** October 26, 2011

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Jeff M. Barron
BARNES & THORNBURG LLP
jeff.barron@btlaw.com

Michael R. Brunelle
BARNES & THORNBURG LLP
mbrunelle@btlaw.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Edward A. McConwell Sr.
MCCONWELL LAW OFFICES
ed@mcconwell.com

Koryn Michelle McHone
BARNES & THORNBURG LLP
kmchone@btlaw.com

Peter Abernethy Morse Jr
BARNES & THORNBURG LLP
pmorse@btlaw.com

Charles W. Ryan III
DOMBROFF GILMORE JAQUES & FRENCH, P.C.
cryan@dglitigators.com

Joseph Striewe
joestriewe@striewelaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com

Judy L. Woods
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
jwoods@beneschlaw.com